Stock Yards National Bank of South St. Paul v. Commissioner.
Stock Yards Nat'l Bank of South St. Paul v. Commissioner
Docket No. 111537.
United States Tax Court
1947 Tax Ct. Memo LEXIS 225; 6 T.C.M. (CCH) 478; T.C.M. (RIA) 47122; April 29, 1947
*225 The taxpayer having failed to establish its statutory cost basis for two farms acquired by it in 1938, no loss deduction may be allowed in 1939 upon the sale of such farms. Grant W. Anderson, Esq., c/o Northwestern Nat. Bank & Trust Co. of Minneapolis, Minneapolis, Minn., for the petitioner. Edward C. Adams, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Sur Mandate This case was remanded to this Court by the Circuit Court of Appeals for the Eighth Circuit for further proceedings in accordance with its opinion. . The Commissioner determined that the transfer in March 1938 of all the assets *226 of the Stock Yards Mortgage Company, including the Stebbins farm and the McBride farm, to petitioner in consideration of the assumption by it of the liabilities of the Mortgage Company was a complete transaction; that for the purpose of determining gain or loss to petitioner upon the sale of the Stebbins and McBride farms in 1939 its cost basis was the value of such farms when acquired; that such value was equivalent to the 1939 selling price; and that hence petitioner did not sustain a loss on the sale of the farms as claimed. The petitioner contended that the 1938 transaction was a reorganization within the meaning of section 112 (g) (1) (C) of the Internal Revenue Act of 1938 and that its basis was the same as it would be in the hands of the transferor. Section 113 (a) (7) (B). The Tax Court, in its supplemental memorandum opinion (September 18, 1944), held that the 1938 transaction, as a result of which petitioner acquired the two farms, constituted a reorganization within the meaning of section 112 (g) (1) (C); that proof of basis under section 113 (a) (7) (B) was part of the burden necessarily assumed by petitioner in attempting to prove error in the respondent's determination *227 of the deficiency; that upon the record as made such basis could not be determined; and that for that reason decision must be for the respondent. Petitioner thereafter moved that the case be reopened for the presentation of further evidence, which motion was denied (October 12, 1944). The petitioner, therefore, appealed to the Circuit Court of Appeals, which reversed and remanded. In its opinion the Circuit Court of Appeals stated that, assuming that the Mortgage Company's unadjusted basis for the determination of loss or gain was the amount for which the farms were acquired by it at foreclosure sales, it was impossible to tell from the evidence the Mortgage Company's adjusted basis for the farms at the time of the transfer to petitioner and that it was also impossible to determine whether or not the Mortgage Company had sustained a gain or a loss recognized to it upon the transfer of all its assets to petitioner and petitioner's nominee for a lump-sum consideration. It was held, however, that the application of petitioner to The Tax Court for the opportunity to offer further evidence should have been granted, since the Commissioner's determination was induced by a clear mistake *228 of law and affirmed by The Tax Court without consideration by either of the facts necessary to a lawful determination of the deficiency. Accordingly, further hearing was had to permit petitioner to present evidence to establish its cost basis. From the evidence presented we make the following additional Findings of Fact The Stebbins farm was acquired by the Mortgage Company on October 23, 1922, by sheriff's deed at a foreclosure sale for a stated consideration of $13,230.15 * Until December 31, 1937, the value of the farm was carried on the Mortgage Company's books at $14,864.66, which, according to the books of account of the Mortgage Company, consisted of the following items: Dec. 2, 1921 Loans
$11,000.00
Interest earned
1,364.63
Interest accrued but not earned
598.13
Foreclosure expense
74.02
Jan. 13, 1922 Legal expense paid
193.30 *
$13,230.08 *
Nov. 2, 1922 1919, 1920 and 1921 taxes
946.28
Dec. 11, 1922 (Unexplained)
142.85
Dec. 11, 1922 1922 taxes
309.41
1,398.54
$14,628.62
July 31, 1929 First half of 1928 taxes
236.04
Total
$14,864.66
*229 The Stebbins farm containing 640 acres more or less was located in Bottineau County, North Dakota. No buildings were located thereon. The McBride farm was acquired on May 19, 1932, by the Mortgage Company by sheriff's deed at foreclosure sale for a stated consideration of $3,672.90, which amount consisted of the following items: Principal note
$2,700.00
Interest on above
315.60
Interest note
86.20
Interest on above
10.45
Taxes and interest
224.92
Attorney's fee
250.00
Court costs
35.25
Abstract of title
14.00
Interest on Judgment
20.43
Costs of sale
16.05
Total
$3,672.90
In a ledger account of the Mortgage Company, captioned "P. J. McBride Property", under date "1931", the value of the property was entered as $3,216.25, consisting of: Amount of loan
$2,700.00
Interest, taxes, foreclosure costs
516.25
$3,216.25
The farm was sold on contract April 22, 1935, for $3,200. The vendees made a down payment of $600, of which $160 was paid as commission and $157.88 for delinquent taxes. The amount of $600 was credited to the ledger account "P. J. McBride Property", together with an amount of $16.25, which latter amount was charged *230 to undivided profits, leaving a debit balance in such ledger account of $2,600. The purchasers defaulted and the Mortgage Company canceled the contract. Until December 31, 1937, the Mortgage Company carried the value of the farm on its books at $2,600. In the 1935 income tax return of the Mortgage Company a bad debt deduction of $383.26 was claimed, which included the amount of $16.25 charged to undivided profits, $157.88 paid for delinquent taxes on the McBride farm and $160 paid for Commission on the sale of such farm in 1935. The McBride farm contained approximately 240 to 300 acres in Cascade County, Montana. Several buildings, including a dwelling, were located thereon, which in October 1932 were all in a run-down condition and in need of repairs. Adjustment was made on the books of the Mortgage Company on December 31, 1937, charging off all of its real estate assets at an aggregate valuation of $70,773.18, including the Stebbins farm at $14,864.66 and the McBride farm at $2,600, to undivided profits and the revaluation of all such real estate at $33,381.53. This adjustment was reflected in the 1937 income tax return of the Mortgage Company as follows: In the balance sheets, *231 Schedule N, the real estate was shown as follows: Beginning
of the
End of the
Taxable Year
Taxable Year
Buildings
$12,000.00 $ Land
58,271.05
33,381.53 In Schedule B - "Reconciliation of net income and analysis of earned surplus and undivided profits" under item 12 - "Other unallowable deductions" was typewritten "Land Written Down $37,391.65." By the above adjustment the ledger accounts covering the Stebbins farm and the McBride farm were closed and no further entries were made thereafter in either of them. From copies of the income tax returns of the Mortgage Company presented in evidence the real estate owned by the Mortgage Company included "Frame Buildings on Montana Ranch" acquired in 1920 at a cost of $6,000 and "Frame Buildings on South Dakota Ranch" acquired in 1925 at a cost of $6,000 and "Frame Buildings on South Dakota Ranch" acquired in 1925 at a cost of $6,000, on which, as shown by its 1938 return, allowable depreciation at 3 per cent to December 31, 1937, was $5,220. A deduction for depreciation of $360 was claimed in the 1938 return. Opinion VAN FOSSAN, Judge: The respondent contends that the petitioner has failed to establish *232 any bases whatever for computing gain or loss upon the sales of the Stebbins and McBride farms in 1939 and that hence respondent's determination of the bases should not be disturbed. Since the transaction by which petitioner acquired the farms was a reorganization as defined in section 112 (g) (1) (C) of the Revenue Act of 1938, petitioner's basis is, as stated in this case by the Circuit Court of Appeals: * * * the same as the basis of the mortgage company, 'increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.' ( § 113 (a) (7) (B)). And because the petitioner's basis under this section is a substituted basis, as defined in section 113 (b) (2) (A), adjustments for items chargeable to capital account, obsolescence, and depreciation ( § 113 (b) (1) (A) and (B)) must be made for the period during which the mortgage company held the farms in order to arrive at the mortgage company's basis when the transfer to petitioner was made. Adjustments of similar nature are required for the period during which petitioner held the farms. Petitioner's cost basis is *233 not the value of the farms at the time acquired, as determined by the respondent, and hence the respondent's determination in that respect may not be approved. However, petitioner is claiming a deduction, and it is under the burden of proving facts necessary to establish its right to take the deduction claimed, and also under the burden of proving the amount of the deduction. Bennett v. Commissioner, 8 Cir., 139 Fed. (2) 961, 963; . That is to say, in this case the burden of establishing the basis for the computation of petitioner's gain or loss on the sale of the farms * * * [is] upon the petitioner, and this burden 'extends to all adjustments either by way of increase or decrease which must be made' to any established unadjusted basis. [] If it fails to discharge its burden of proof it is not entitled to any deduction. The Circuit Court of Appeals, being of the opinion that petitioner had not been afforded an opportunity to meet its burden of proof in respect to its bases of the two farms, remanded the case to permit petitioner to adduce *234 further evidence. The petitioner contends that "the exemption in case of reorganization contained in section 113 (a) (7) (B) is in addition to the exemptions allowed in case of sale or exchange under section 112 (b), and that said section 113 (a) (7) (B), taken together with the definition of 'reorganization' appearing in section 112 (g) (1) (C), are complete in themselves." In other words, it contends that no gain or loss is recognizable on the 1938 transaction by which it acquired the Stebbins and McBride farms. The fact that there was a reorganization within the purview of section 112 (g) (1) (C) does not automatically make the 1938 transaction tax-free. Section 112 (g) merely defines the term "reorganization" and does not provide that every reorganization therein defined be tax-free. Neither does section 113 (a) (7) require all reorganizations to be tax-free. ; , affirmed (CCA-8) . On the contrary, section 113 (a) (7) (B) requires an adjustment of the transferor's basis for the gain or loss, if any, recognized under the law in effect *235 at the time the property was transferred. The nonrecognition of gain or loss is limited to the transactions expressly described in the exceptions to the general rule, both stated in section 112. ; ; ; ; . Since petitioner claimed that the 1938 transaction was exempt from taxation, the burden of establishing such exemption and of bringing the transaction within the statutory exemption is upon it. , affirmed . This it has failed to do. In fact, petitioner contends that the provisions of section 112 have no application to the type of transfer that occurred in this case. We agree. The Mortgage Company turned over all of its assets to petitioner in payment of its obligation to petitioner and the assumption by petitioner or its nominee of petitioner's insurance business accounts payable. Petitioner was not a stockholder of Mortgage *236 Company. Northwest Bancorporation owned 81.7 per cent of all of the outstanding stock of petitioner and 492 shares of the 500 shares of outstanding stock of Mortgage Company. Northwest Bancorporation decided to liquidate and eliminate Mortgage Company and did so by causing certain of the assets of Mortgage Company to be transferred to petitioner and its insurance business to Union Investment Company, petitioner's nominee, which was a wholly-owned subsidiary of Northwest Bancorporation. , cited by petitioner, does not support its position. It was therein held that, although a transaction can not meet the statutory requirements of "reorganization" (section 112 (g), 1936 Act), it can, nevertheless, qualify under section 112 (b) (5) so that no gain or loss may be recognized. The respondent concedes that the sheriff deeds adduced in evidence by petitioner show the transferor's unadjusted bases, i.e., $13,230.15 for the Stebbins farm and $3,672.90 for the McBride Farm. As to the Stebbins farm, records of the Mortgage Company indicate that certain taxes and an unexplained item of $142.85 were capitalized by charging the *237 same to the ledger account covering the Stebbins farm, making a total charge to such account as of July 31, 1929, of $14,864.66. This amount was used by petitioner as basis. The farm was without improvements and hence no depreciation was allowable. As to the McBride farm, the ledger account covering the McBride farm taken from the Mortgage Company's books of account, shows a charge in 1931 of only $3,216.25. Petitioner was unable to explain the discrepancy between this amount and the consideration of $3,672.90 stated in the sheriff's deed. There were several buildings on the farm. In 1931 and 1932, one McCann, who had bought the farm on contract from McBride, and his family lived on the farm. Although in a run-down condition the buildings may have been of some value. There is no evidence from which their cost or value, if any, may be determined. It is immaterial that neither the Mortgage Company nor petitioner claimed any deduction for depreciation in their returns. Under section 113 (b) (1) (B) adjustment must be made for depreciation "to the extent allowed (but not less than the amount allowable)." From the evidence it is impossible to determine the amount of depreciation allowable *238 and hence no adjustment can be made as required by the statute. It is impossible on the record to determine the amount of gain realized or the loss sustained by the Mortgage Company on the transfer by it of all its assets of its liability of $29,500 to petitioner and the assumption of its accounts payable of $10,062.40, or a total consideration of $39,562.40. There is no allocation of this consideration to the various assets transferred and in particular to the various farms. Disregarding the $2,000 item included in both assets and liabilities and the small item of miscellaneous receivables of "($54.20)", the book value of the assets of the Mortgage Company as of March 28, 1938, was $53,830.23. To this must be added the amount of $37,391.65, which was written off by a charge to undivided profits as of December 31, 1937. A copy of the 1937 return of the Mortgage Company does not show a deduction taken for the charge-off and no deduction would have been allowable for what appears to have been no more than a reduction in book value of realty. The evidence indicates that in addition to the Stebbins and McBride farms, the Mortgage Company owned a farm in Montana which it had acquired *239 in 1920 and a farm in South Dakota which it had acquired in 1925, on each of which buildings were located having a stated aggregate cost of $12,000 and that the allowable depreciation thereon up to 1938 was $5,220. These book figures indicate that Mortgage Company may have sustained a loss and section 113 (a) (7) (B) requires that the adjusted basis of the Mortgage Company at the time of the transfer in 1938 must be "decreased in the amount of the loss recognized to the transferor upon such transfer." However, it is impossible to determine what portion of the loss is allocable to the Stebbins and McBride farms. As of December 31, 1937, the Mortgage Company charged off all real estate assets of the book value of $70,773.18 to undivided profits and as of the same date revalued or set up such assets on its books at a value of $33,381.53. No portion of this new value was allocated to or set up in the ledger accounts covering the Stebbins farm and the McBride farm, which were closed out as of December 31, 1937. As of March 28, 1938, the date of transfer to petitioner the book value of the real estate assets was $30,085.53. The decrease in value as of December 31, 1937, and as of March 28, 1938, is *240 not explained. It may or may not represent another required adjustment to the Mortgage Company's basis. It is reasonable to assume that, since both the Stebbins farm and the McBride farm were carried on the books without value, no part of the consideration received by the Mortgage Company is allocable to them and that consequently the Mortgage Company sustained a loss to the extent of its adjusted basis at the time of the transfer on March 28, 1938, leaving no basis whatever for petitioner. The fact that there is no evidence showing that petitioner set up either farm on its own books supports such assumption. That the Mortgage Company purchased the respective farms in 1922 and 1932 and itself went out of existence in 1938, that its records were lost or destroyed, and witnesses having knowledge of the facts were unavailable or that the recollection of available witnesses had dimmed does not relieve petitioner of its burden of proof. As stated in , "The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne *241 by him." It is our conclusion that the petitioner has failed to establish the statutory basis required to be used by it in determining the gain or loss upon the sale in 1939 of both the Stebbins and McBride farms, and having failed so to do, no loss may be allowed. Since no loss is allowable it is not necessary to determine whether the loss, if any, was an ordinary or capital loss. Decision will be entered under Rule 50. Footnotes
*. The discrepancy of 7 cents between purchase price as stated in sheriff's deed and as entered in ledger is due to the fact that the amount of $193.37 was included in purchase price as legal expense whereas the amount actually paid was $193.30.↩